# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 22, 2010

## STATE OF TENNESSEE V. RICKY LANE MCKNIGHT

**Direct Appeal from the Circuit Court for Marshall County**
**No. 2010-CR-7    Robert Crigler, Judge**

_____

**No. M2010-01092-CCA-R3-CD - Filed December 1, 2010**

_____

A Marshall County grand jury indicted the Defendant, Ricky Lane McKnight, for violation of the Habitual Motor Offender Act and driving on a revoked license. The trial court ordered the Defendant to serve an effective sentence of three and one-half years. On appeal, the Defendant argues that the trial court's sentence is excessive. After a thorough review of the record and the applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the Appellant, Ricky Lane McKnight.

Robert E. Cooper, Jr., Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; Charles F. Crawford, Jr., District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts
### A. Guilty Plea Hearings

A Marshall County grand jury indicted the Defendant for violation of the Habitual Motor Offender Act, a Class E felony, and driving on a revoked license, a Class A misdemeanor. At the Defendant's February 2010 plea submission hearing, the State summarized the evidence supporting the Defendant's charges as follows:

These events occurred on December 6, 2009, here in Marshall County, Tennessee. Prior to that, out of this court, the [D]efendant had an order declaring him to be an habitual motor offender.

Also, his driver's license was revoked, and he had been convicted of driving on a revoked driver's license . . . seven prior times before this.

.   .   .   .

On [December 6 2009], a city officer sees the [D]efendant driving an automobile on the city highways, with a taillight out. He pulls the taillight over; discovers that the driver is [the Defendant].

[The Defendant] tells him he doesn't have a driver's license. When the officer runs it, he determines exactly what I have told you, that his license has been revoked.

The Defendant plead guilty to violation of the Habitual Motor Offender Act and to driving on a revoked license, with the sentences to be determined by the trial court.

### B. Sentencing Hearing

The Defendant was sentenced for the above named convictions on April 28, 2010. The following evidence was presented at the sentencing hearing: The parties agreed that, based upon the Defendant's criminal history, he was a Range II offender. The State entered into evidence the facts read into the record during the plea submission hearing and the Presentence Investigative Report.

Loranda Borja, who works for the Tennessee Probation and Parole Department, testified that she prepared the Presentence Investigation Report for this case. Borja testified that the Defendant gave the following statement as to the events underlying these charges: "I wasn't driving a car that day. Howard Bryant was with me. He was driving the car, and he is a diabetic. He had a diabetic spell, and the reason I was driving was to get him home and get his medication." Borja agreed that the police officer's report, which the presentence report included, indicated that the Defendant's vehicle was "released to Howard Bryant, at the owner's request."

Borja testified that the Defendant met with her one week after he entered a guilty plea for the charges in this case while released from jail on bond. During this interview, the Defendant said that he began using alcohol at age fourteen and last used alcohol the Friday night prior to her interview with him. The Defendant told Borja that he typically drinks a twenty-four pack of beer every Friday night. The Defendant said that he first used marijuana

at age fourteen and reported smoking marijuana every Friday night including the Friday night prior to his interview with Borja.

Borja testified that she had difficulty contacting the Defendant's prior employers. She described his work history as "odd-job kind of things" and said that he had not worked at all during the current year.

On cross-examination, Borja agreed that the Defendant had only one conviction for driving under the influence and that his last criminal conviction was in 2001.

Larry Hazelwood, a Lewisburg City Police Department officer, was the officer who arrested the Defendant on these charges. The officer stated that he had no indication that Howard Bryant, the individual to whom the Defendant's car was released, was experiencing a serious medical condition, as the Defendant contended in his interview with Borja.

The Defendant testified that he was forty-nine at the time of the sentencing hearing and lived with his "boss man," Jimmy Bryant. The Defendant testified that, for three or four months, he had full-time employment cleaning theaters during the night. The Defendant explained that he rides to and from work with his "boss man." The Defendant acknowledged that he had "a lot of driving problems" but noted that his last conviction was in 2001. The Defendant said that he knew he was not supposed to be driving but received the 2001 conviction because he was the "only kid at home" and helping his mother pay bills so he had to drive to and from work.

The Defendant agreed that he drinks a twenty-four pack of beer at home on Friday nights but said that he neither drives after drinking nor drinks during the week. As to the charges against him in this case, the Defendant said:

> I have learned a lot. I sure know I should not have been driving. Like I said, it was a have-to case, or I wouldn't have done it, if it wouldn't have had to be a have-to. I hadn't drove in 10 years. I wouldn't have been driving then. I don't drive no more, none.

On cross-examination, the Defendant agreed that smoking marijuana was illegal and that he smoked marijuana while released on bond, two days after pleading guilty to the charges in this case.

At the conclusion of the hearing, the trial court merged the driving on a revoked license conviction with the violation of the habitual motor offender act conviction and sentenced the Defendant to serve three years and six months. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant claims that the trial court's sentence of three and one-half years to serve in jail is excessive in light of the following facts: he was polite and forthright with the probation officer, he is employed, his last conviction was in 2001, and on the night in question, he drove only because his companion was experiencing a diabetic episode.

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2009). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts (2009). This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the Sentencing Act, the appellate court may not disturb the sentence even if a different result was preferred. Tenn. Code Ann. § 40-35-103 (2009); *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

The Tennessee Criminal Sentencing Reform Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2), (d) (2009); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn.2008). The Tennessee Code allows a sentencing court to consider the following enhancement factors, among others, when determining whether to enhance a defendant's sentence:

> (1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; ...

> (8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community;

T.C.A. § 40-35-114(1) and (8) (2009). If an enhancement is not already an essential element of the offense and is appropriate for the offense, then a court may consider the enhancement factor in its length of sentence determination. T.C.A. § 40-35-114 (2009). In order to ensure "fair and consistent sentencing," the trial court must "place on the record" what, if any,

enhancement and mitigating factors it considered as well as its "reasons for the sentence." T.C.A. § 40-35-210(e). Before the 2005 amendments to the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors it found to apply to the defendant. T.C.A. § 40-35-401(b)(2) (2009). The 2005 amendments deleted as grounds for appeal, however, a claim that the trial court did not properly weigh the enhancement and mitigating factors. See 2005 Tenn. Pub. Acts ch. 353, §§ 8, 9. In summary, although this Court cannot review a trial court's weighing of enhancement factors, we can review the trial court's application of those enhancement factors. T.C.A. § 40-35-401(d) (2009); *Carter*, 254 S.W.3d at 343.

The Defendant, a Range II offender, was sentenced for a violation of the habitual motor offender act, a Class E felony, which has a sentencing range of two to four years. *See* T.C.A. § 40-35-112(b)(5).

The trial court applied two enhancement factors: (1), that the Defendant had a previous history of criminal convictions or criminal behavior; and enhancement factor (8), that the Defendant, before sentencing, failed to comply with the conditions of a sentence involving release into the community. T.C.A. § 40-35-114(1) and (8). The trial court applied mitigating factor (1), that the Defendant neither caused nor threatened serious bodily harm, and the "catch-all" mitigating factor (13), citing the fact that the Defendant pled guilty sparing the taxpayers the expense of trial. T.C.A. § 40-35-113 (1) and (13). The trial court stated that it placed "greater weight" on the Defendant's prior record than on the mitigating factors present in the Defendant's case. Based upon its findings, the trial court sentenced the Defendant to three years and six months for the Class E felony conviction.

The Defendant does not specifically challenge the trial court's application of enhancement factors and mitigating factors, but makes a blanket assertion that the sentence is excessive. In reviewing the sentence, we will consider both the trial court's application of enhancement factors and its denial of alternative sentencing, as both go to the Defendant's complaint that the sentence is excessive. Our review of the record reveals that the trial court correctly applied enhancement factor (1). The Defendant, who was sentenced as a Range II offender, had four prior felony convictions. Additionally, the Defendant had seven convictions for driving with a revoked license, four convictions for failure to carry a license, one conviction each for driving under the influence, leaving the scene of an accident, driving with a suspended license, disturbing the peace, and assault. Also, he admitted that he used illegal drugs. This extensive criminal conduct demonstrates that the Defendant has a "previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." *See* T.C.A. § 40-35-114(1). As such, the trial court properly applied enhancement factor (1) to the Defendant's conviction.

Further, the record reflects that the Defendant was sentenced to community corrections for his 2001 conviction for violation of the Habitual Motor Offender Act, and later the

Defendant's community corrections sentence was revoked. Thus, the record supports the trial court's finding that, "before trial or sentencing, the Defendant failed to comply with the conditions of a sentence involving release into the community." *See* T.C.A. § 40-35-114(8). As such, the trial court properly applied enhancement factor (8) to the Defendant's conviction.

We now turn to the issue of alternative sentencing. Under the 2005 amendments to the Sentencing Reform Act, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6) (2006)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id*. (footnote omitted). T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider " them. T.C.A. § 40-35-102(6) (emphasis added).

A defendant seeking probation bears the burden of "establishing [his] suitability." T.C.A. § 40-35-303(b) (2006). As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303 (2009), Sentencing Comm'n Cmts.

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(A)-(C) (2009). In choosing among possible sentencing alternatives, the trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

At the sentencing hearing in this case, the trial court sentenced the Defendant as a Range II, multiple offender to a sentence of three years and six months of incarceration. The court then set out to determine the manner of service and made the following findings:

> When your license is revoked and then, later, when you're declared an habitual traffic offender, the law expects you not to ignore that. It is not your decision just to choose to drive in violation of that. It is [a] criminal offense[].
>
> Confinement is needed to avoid depreciating the seriousness of the offense.
>
> And more applicable is less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the [D]efendant. The [D]efendant has been on probation many times before. Obviously, that has not deterred him. And even jail sentences have not deterred him from continuing to violate the law.
>
> Also, looking at things like [his admission of] smoking marijuana after he pled guilty in this case.
>
> . . .
>
> It appears he has been to Buffalo Valley before, so that didn't do any good. So I am going to deny alternative sentencing.

Based upon its findings under Tenn. Code Ann., section 40-35-103, the trial court denied the Defendant an alternative sentence.

The record does not preponderate against the trial court's findings. The Defendant was declared a habitual motor offender on May 18, 1992. It is after this date that the Defendant acquired the seven convictions for driving on a revoked license, the DUI conviction, and his previous felony conviction for violation of the Habitual Motor Offender Act. Many of these sentences involved a combination of jail time and supervised probation. The Defendant, in his interview for the presentence report, both denied driving and justified his violation of the law as necessary due to his companion's illness. Further, he later requested the officer release his vehicle to the same person he now claims was too ill to drive. Two days after pleading guilty to these crimes and while released on bond, the Defendant engaged in additional criminal activity by smoking marijuana. Finally, the presentence report indicates a failed attempt at a recent probated sentence. Thus, the record adequately supports the trial court's findings that confinement is necessary to avoid depreciating the seriousness of the offense and least restrictive measures have been unsuccessful. We conclude that, in ordering confinement, the trial court considered the pertinent facts of this case and appropriate sentencing principles. As

such, its denial of alternative sentencing is presumptively correct. *See* T.C.A. § 40-35-401(d); *Mencer*, 798 S.W.2d at 549. The Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude that the trial court adhered to proper statutory sentencing procedures and considered appropriate factors when it imposed its sentence. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE